EAST TENNESSEE NATIONAL BANK v. FIRST NATIONAᵀ BANK et al.

1. SALE OF LAND. *Rescission. Fraud. Concealment of incumbrances.* A vendor selling land, subject at the time to unpaid lien for purchase money, which he conceals or does not reveal to vendee, is guilty of fraud, and the vendee entitled to rescind in a court of equity, notwithstanding he has a covenant of warranty in deed of conveyance.

2. SAME. *Same.* On such rescission, the vendee is entitled to the repayment of the money paid for the land, less rents and taxes paid by him—no other party being entitled to the rents.

3. SAME. *Same. Chancery pleadings and practice.* Vendee having only a covenant of warranty of title, there being no actual or constructive eviction by paying off incumbrances, cannot ask under alternative prayer, that vendor be compelled to remove incumbrances found to exist. The measure of recovery on breach, either actual or constructive, of covenant of warranty, is but purchase money with interest; and this court cannot on such warranty, even if broken, compel removal of such incumbrances as may constitute the breach.

4. SAME. *Same. Consideration.* The real consideration recited in a deed may always be inquired into, on a bill for rescission.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

LOGAN & LUCKEY and H. H. INGERSOLL for complainant.

W. P. WASHBURNE and GEO. ANDREWS for defendants.

FREEMAN, J., delivered the opinion of the court.

In 1872, complainant purchased from respondent the banking house in which the latter bank had carried on its business for some years before. At the date of the purchase, there existed a lien in favor of S. Watson, trustee for the Bank of Tennessee, for unpaid purchase money, due for the property sold. It had been purchased by the Exchange and Deposit Bank at a sale made by Watson, together with other real estate adjoining, and then this banking house sold to the respondent. The consideration has been paid by complainant, and a deed with general warranty of title conveyed, has been made to the purchaser. The consideration stated on the face of the deed is twenty-five thousand dollars. The purchaser is still in possession, never having been evicted up to the present time.

The bill seeks as its leading object, and this is certainly the *gravamen* of its charges, a rescission of the contract on the ground of fraudulent concealment of the existence of the incumbrance in form of a lien for unpaid purchase money. The fact that such lien exists, was known, or might and should have been known by the vendor, is clearly made out in the record, and that the fact was not communicated to the purchaser. There is no evidence of any purposed fraud in this, as it clearly appears the vendor assumed the

lien had been or certainly would be removed by payment, and would never embarrass the title conveyed. This turns out to be a mistake, and the whole remains to this day an existing incumbrance, to the satisfaction of which the property is liable, but has not been as yet subjected.

The chancellor decreed a rescission of the contract as then sought by complainant. He further made the proper order as incident to the relief decreed, directing an account and report of the purchase money paid for the house and lot, with the reasonable value of the rents while occupied by complainant, less taxes paid on the same. This was necessary, as a matter of course, in order to effectuate and complete what had been decreed, and end the litigation between the parties.

It appeared in the answer of the respondent, as well as clearly from the proof, that the value of the house and lot was only estimated in the negotiation between the parties at about $15,000, while the other advantages and benefits obtained or purchased from respondent, included under the idea of good will, made up the other ten thousand dollars of the consideration stated on the face of the deed. The chancellor took this view of the facts—the only one really to have been taken from the case as made out in the pleadings and proof before him.

The good will in this case evidently consisted in results favorable and advantageous to the purchasers, arising not only from the occupation of this precise house, long used as a bank, with an established line of customers, but also in other stipulations of the con-

tract, such as that, on the day complainant was ready to open their bank for business, the vendor should at once cease to do such business, by discounting notes, receiving deposits, in a word, going into liquidation in favor of the purchaser, the purchasing bank to close up the unsettled business of the retiring bank.

It is obvious that these elements of value were fairly the subjects of contract, and advantages which were desirable, and to be sought as benefits by the purchaser. They do not admit of precise estimation, but elements of uncertainty necessarily enter into such a calculation; still the parties had the right, the one to demand pay for them, the other to agree to give what was demanded or refuse, as he might deem to his interest, and whatever estimate the parties themselves put upon such incidental advantages would not be likely to be disturbed or dissented from by a court dealing with such a contract made between intelligent business men, where no fraud or bad faith had entered into the transaction. We need not undertake to analyze the elements of value that entered into the considerations mentioned, to see how much of them consisted in the advantage of continuing a banking business in the stead of a retiring bank, though under a different name, and the prospect of being able to retain its customers under the circumstances, or how much came from the fact of the occupation of the banking house, commonly called "the good will of the premises," and which only could be dealt with as a part of the premises: See *Stewart* v. *Gladstone*, 27 W. R., 512; L. R., 10 Ch. Div., 625; Albany Law Register, vol. 19, 503.

It suffices to say, that all the elements we have mentioned entered into the consideration of this contract of sale and purchase, and were estimated evidently by the parties at $10,000, and so the chancellor has found.

On this basis he has made his decree, giving complainant a rescission of the contract for sale of the house and lot; required respondents to pay back the money received for the house and lot, but charged complainant with rents during the period of occupation, less taxes paid. From this decree complainant has appealed, the defendant making no objection to it, submitting to the result, insisting the chancellor has made the proper decree as to the incidental relief, conceding the right to a rescission.

We need not discuss the propriety of the chancellor's decree ordering a rescission of the contract on the facts. The case was clearly made out, so far as it can stand on the ground of concealment or failure to give information of an incumbrance on the lot materially affecting the title.

The only question is, whether the complainant, on the facts of the record, was entitled to any different decree from that which he has obtained. He insists he is entitled, under the alternative prayer of his bill, to compel the vendor to specifically execute his contract, and then assumes that contract to be one, if executed, that will authorize this court to compel the removal of the incumbrances now shown to be fastened on the land. In this last assumption lies the error of the contention. The vendor has only given, the vendee only received, a covenant of warranty of title.

All that this covenant gives him he would fairly be entitled to, but that is settled by all our authorities to be, when breached, the purchase money paid, with interest. The breach ordinarily is by eviction, but when valid incumbrances are found on the land, we have held, the vendee may . pay these off, and treat this as an eviction *pro tanto,* and recover for such breach. We cannot, however, in a case like this, make an additional covenant, to-wit, one against incumbrances, and finding that broken, enforce that by compelling the party to perform it, when in fact he has only a covenant of warranty, which has not been broken either by eviction, or constructively breached by the payment and discharge of all or any part of the incumbrances by the vendee. This would be to make a contract to meet the exigencies of the case, which the parties have not made, and enforce it after thus making it.

If we should say, on the principle of *quia timet,* growing out of anticipated difficulty in securing indemnity on the covenant against the bank, it being in litigation, and assets about to be distributed, that we would anticipate the actual breach in either of the recognized methods stated, the result would only be the same, a decree for payment of the purchase money back with interest, credited by rents enjoyed by purchaser, less taxes paid by him, and betterments that have permanently enhanced the value of the land. No third party claims the rents in this case, or is now entitled to do so. This is precisely the result reached by the chancellor's decree, and we see no way

to avoid the conclusion he has reached. The case of *Baird* v. *Goodrich*, 5 Heis., 23, is in accord with this view, as there was both a covenant of seizin, as well as of warranty, the covenant of seizin being broken as soon as made, being false. Even on the idea that the covenant of warranty and insolvency gave the right in that case, the measure of relief was not discussed or decided, and could only have been the purchase money with interest, less value of betterments, after deducting rents and taxes.

The decree of the chancellor is affirmed with costs.

Upon petition to rehear, FREEMAN, J., said:

We have examined the earnest petition for rehearing presented in this case. We proceed to notice the proposition urged on our consideration.

First, it is assumed gross injustice has been done the petitioner, by the judgment of this court, and that in favor of a fraudulent vendor.

In reply we need only say, this is not perceived. In the first place, if the other party had appealed, and objected to a rescission, on the ground that complainant could not restore what it had received, or place the vendor in *statu quo*, it would have been difficult to have met this defense. We have seen no authority holding a party can, as a general thing, rescind a contract, unless he is in a condition to do this, especially after delay, with the means by ordinary diligence of ascertaining his rights.

E. Tenn. National Bank *v.* First Nat. Bank.

If this, however, could be done in an exceptional case, it surely could never be done, without requiring the party seeking the rescission, to account for what he had received, and had disabled himself, or was in any way unable to restore. This would be obvious justice. This being so, the complainant, having enjoyed the good will, or advantages, included under these very inapt words to express the matter, would have to account at value at which sold, and so the ten thousand dollars would still have to be accounted for precisely as has been done, as to the result. It is impossible to restore these advantages. The vendor has gone out of business—one generally profitable—so desirable, that the purchaser was willing to pay ten thousand dollars for the chance of obtaining what it might of it, by getting the privilege of closing up the bank. This was the real value, as is evident, which was seen and paid for. The mere location was a small matter. If the bank had not gone into liquidation, but had removed to an adjoining building, or even one a block or more from it in the city, it can scarcely be doubted, it would have retained its business, as well as at the old stand. But the advantages we mention have all been enjoyed and can never be restored. The bank cannot now reorganize, call back its capital and customers—yet the complainant objects that it shall not be permitted to retain all this, and still have a rescission. We are unable to see the injustice of the decree made.

As to the iniquity of the respondent, the record shows nothing of it. It shows it paid to Exchange

Bank, and supposed the incumbrance had been discharged, with good reason. The fraud was only in legal effect, but not the slightest evidence of want of perfect good faith. The rescission goes on the idea that the injury was the same to the purchaser, whether fraud was intended or not; and this is the only ground on which it can stand, from the facts of the record.

It is said, however, the measure of damages in case of an incumbrance when paid off by the purchaser, is the amount of said incumbrance with interest from the time paid, treating such payment as an eviction *pro tanto*. This is certainly true. But there has been no payment so as to give an eviction *pro tanto*, with its rights—only an incumbrance shown to exist, how much at present we have no means of knowing from this record.

It happens unfortunately for complainant, as it says it has been unable to ascertain the amount of the incumbrance, so as to pay it off. If it had been done, however, it could only have recovered as on a breach of the covenant of warranty, and could not have gone beyond the amount of purchase money and interest, so that the limit of recovery on the covenant is thus fixed by the covenant.

We see no way to avoid the conclusion we have reached, on the pleadings and the case as presented. The incumbrancer is no party to this suit. We cannot direct a discharge by these parties so as to bind him. Complainant has filed its bill for a rescission, has got what it sought, but objects to the necessary incidentals of the decree sought by its bill. It is in

a very doubtful position to sustain the claim sought, because unable to return part of the property purchased. Yet now it seeks to have a decree reversed which is precisely what its bill was filed to obtain.

If it had desired, or brought its suit for the relief now sought, it might have been done by making the incumbrancer a party, having an account with him to ascertain what it amounts to, and have had the privilege of discharging that amount, and compelling the vendor to reimburse, if it did not exceed the purchase money. It might in this suit have had the other property assumed to be liable for the debt appropriated in exoneration of the bank, as a purchaser of part of the property, or possibly been substituted to the lien on the same property, by paying off the amount of the debt. But we cannot see how all this is to be effected on a simple bill between vendor and vendee to rescind, and nothing more. In this case we cannot undertake to settle the claim of the incumbrancer, who is prosecuting that claim in another independent suit, or in any way delay him in that matter, by a decree made in this case to which he is no party, and where he cannot be heard. To give the relief sought by the petition, the incumbrancer would have to be a party to the proceeding, that the amount of his incumbrance be ascertained. This would require such additional proceedings to be instituted, as would amount in effect to a new suit for this purpose. We cannot direct this at the end of a tedious litigation, when the party has already decreed to him precisely what his bill was filed originally to obtain. The delay of liti-

gation has accumulated the rents, but this was a matter which was incident to such litigation, and the result must be borne.

It would be an extreme stretch of all rules of proceeding, in the face of complainant's bill, to grant any relief, except rescission. The language is: "And complainant comes now into court, as soon as the defects in the title to the property purchased by it are discovered, and the incumbrances upon said property brought to its knowledge, and asks for a rescission of the contract, and tenders the property and its possession back to respondent, and is willing to account with respondent for the fair and reasonable rents of the property out of the purchase money and interest while the same has been in possession." This is what has been granted—can this party now complain? But the trouble is, that then there was claimed, that the whole $25,000, expressed on the face of the deed, was to be repaid, and so complainant was very willing to rescind on these terms. It could well have afforded to do so. But from the proof in this record, no court could have made such a decree. The claim is in the face of all the proof, and one that would have been grossly unjust to allow. But this, as the basis of the above offer, shows that the earnest object of the bill was rescission, and no alternative relief different was desired.

The fact is evident from the whole case, that the complainant never desired to fall back on the alternative prayer, until after the chancellor's decree, which gave them only the real price of the house and lot, and it was seen that the $25,000 claimed as the pur-

chase money in the bill, could not be had. The purpose to seek relief under the alternative prayer, came only, we think, as the result of this fact. Had the complainant's bill been sustained in full, no such claim as is now made would ever have been thought of. The real trouble with complainant is, that he has chosen to take no covenant for or against incumbrances, and desires to have the benefit now of such a covenant under one of warranty.

Dismiss the petition.